THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAVARES BURDINE, Defendant-Appellant.

First District (4th Division)  No. 1—03—3529

Opinion filed November 10, 2005.—Rehearing denied December 9, 2005.

20

Michael J. Pelletier and Tiffany Green, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, Jill Vosicky, and Sally L. Dilgart, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURPHY delivered the opinion of the court:

Following a bench trial, the defendant, Tavares Burdine, was found guilty of aggravated battery. 720 ILCS 5/12—4(b)(6) (West 2002). The victim was a paramedic for the Chicago fire department engaged in the execution of his official duties. Defendant was sentenced to 18 months' probation. The circuit court also ordered the defendant to submit a biological sample for genetic marker testing pursuant to section 5—4—3 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5—4—3 (West 2002)).

On appeal, defendant contends that: (1) his conviction should be reversed because the State failed to prove him guilty of the allegations in the indictment beyond a reasonable doubt; (2) he was denied a fair trial because the judge relied on facts outside the record and was biased against him; (3) the trial court failed to admonish him regarding his appeal rights as required by Supreme Court Rule 605(a) (210 Ill. 2d R. 605(a)) and the case should be remanded for proper admonishments; and (4) section 5—4—3 of the Code of Corrections is unconstitutional as applied because it constitutes an unreasonable search. For the reasons that follow, we affirm the decision of the trial court.

## I. BACKGROUND

At approximately 4:20 a.m. on April 1, 2001, members of defen-

dant's family called the paramedics because they believed defendant was ill or having a seizure. Chicago fire department paramedics Robert Ertl and Katherine Giblin responded to the call. Ertl testified that on this date he was dressed in a sweatshirt with the official Chicago fire department insignia while Giblin was dressed in uniform with Chicago fire department and ambulance patches.

Upon their arrival, Ertl and Giblin entered through the rear of the home. Defendant's mother, Letha Burdine, identified herself to Ertl and Giblin and took them to a guest bedroom off the kitchen where they found defendant lying on the floor unresponsive. Ertl testified that Letha insisted the paramedics examine defendant and take him to the hospital.

The paramedics attempted to rouse defendant by kicking his foot, calling his name, and shaking his shoulders, but were unable to wake him. Defendant's eyelids fluttered during these attempts to rouse him, so the paramedics administered additional field tests to determine if defendant was unconscious. Based on these tests, the information provided to them, and defendant's presenting an odor of alcohol and intoxicated appearance, the paramedics believed that defendant was intoxicated and feigning unconsciousness.

At or around this time, two police officers from the Chicago police department arrived on the scene on a routine call. The police officers came and oversaw the activities in and around the bedroom where the paramedics were tending to defendant. The police did not assist the paramedics at this time.

The paramedics were then able to raise defendant from the floor and he awoke. Letha told defendant that the people there were paramedics and encouraged defendant to cooperate and go to the hospital with them. The paramedics next began attempts to pick defendant up and move him to a collapsible chair in the room. Defendant however protested and was uncooperative. Letha testified that at this time the police officer "caught an attitude" and she began requesting the paramedics and police officers leave.

However, Ertl testified that it was Chicago fire department policy that intoxicated individuals may not refuse care and are to be transported to the hospital. Ertl then got behind defendant, wrapped his arms under defendant's armpits and attempted to grab defendant's wrists to prop him up. At this time, defendant became even more combative and bit Ertl's left forearm.

Defendant did not break the skin of Ertl's arm with his bite; however, Ertl felt pain and immediately pushed defendant away from his arm. Ertl testified that at or around the time defendant bit him, he believed the defendant also punched him, kicked him, and kicked

his mobile recording system. However, Ertl could not definitively state that defendant punched or kicked him.

At or around the time Ertl pushed defendant away, a melee broke out between the police, paramedics and partygoers at the house. Eventually the melee was brought under control by the police. Defendant was placed under arrest, handcuffed, carried out to a squad car and taken by the police to the hospital. Ertl had his arm examined at this time. The skin was not broken, but his arm was red and swollen in the area that defendant bit him.

At the close of the evidence, the trial court found Burdine guilty beyond a reasonable doubt of aggravated battery of a paramedic. Defendant subsequently filed a motion for judgment of acquittal or a new trial. Following argument and a review of the transcript of the trial, the court denied the motion.

At the sentencing hearing, the State offered no aggravating factors. Defendant offered factors in mitigation and suggested that probation would be an appropriate sentence. On November 6, 2003, defendant was sentenced to 18 months' probation and, pursuant to section 5—4—3, ordered to submit blood specimens to the Illinois Department of State Police, Division of Forensic Services and Identification. On November 16, 2003, defendant timely filed his notice of appeal. Defendant did not file a posttrial motion contesting his sentence of probation.

## II. ANALYSIS

### A. Conformance of Evidence With the Indictment

Defendant first claims that the State failed to present evidence at trial in conformance with the indictment. Therefore, defendant claims, he was not proven guilty beyond a reasonable doubt and his conviction must be reversed.

A battery is committed when one intentionally or knowingly causes bodily harm to another without legal justification. 720 ILCS 5/12—3 (West 2002). The aggravated battery statute provides that a person commits aggravated battery when he commits battery on an individual known to be a fireman engaged in the official execution of his duties. 720 ILCS 5/12—4(b)(6) (West 2002). The evidence presented clearly proved defendant guilty of aggravated battery. Defendant knowingly bit an on-duty fireman on the arm causing him bodily harm. Defendant, however, claims this evidence does not conform to the indictment.

Defendant's indictment states, in pertinent part, "Tavares Burdine committed the offense of aggravated battery in that he, in committing a battery, other than by the discharge of a firearm, intention-

ally or knowingly caused bodily harm to Robert Ertl, to wit: Tavares Burdine struck Robert Ertl about the body, knowing Robert Ertl to be a fireman ***." Defendant claims that because it was not proven that he hit Ertl with a fist or kicked Ertl, but rather bit him, the State did not prove each element as charged.

■ In order for a variance between an indictment and proof at trial to be fatal, the difference must be material and of such a character as to mislead defendant in his defense or expose him to double jeopardy. *People v. Williams*, 299 Ill. App. 3d 143, 151 (1998), citing *People v. Rothermel*, 88 Ill. 2d 541 (1982). Defendant does not present such a variance in this case.

■ First, defendant is not at risk of double jeopardy. The indictment clearly identifies the victim, the nature of the incident, and the date and place of the incident. The judgment could be presented to bar subsequent prosecution for the same conduct, preventing the risk of double jeopardy. See *People v. DiLorenzo*, 169 Ill. 2d 318 (1996).

Second, and more importantly, this court does not find a variance between the indictment and the evidence at trial. The indictment simply states that defendant "struck Robert Ertl about the body." One may strike another with a foreign object or, as in this case, with their body. A strike may result from a punch, a kick, an elbow, a knee, or a bite. When a crime can be committed by several acts, as in this case, a variance between the act named in the indictment and the act proved will not be fatal. *People v. Taylor*, 84 Ill. App. 3d 467, 470 (1980), citing *People v. Simpkins*, 48 Ill. 2d 106 (1971); *People v. Nelson*, 33 Ill. 2d 48 (1965), *cert. denied*, 383 U.S. 918, 15 L. Ed. 2d 671, 86 S. Ct. 911 (1966).

Furthermore, even if one accepted defendant's argument that the indictment was not specific, this issue of semantics is not so material as to have misled the defense in this case. The arrest report narrative states that defendant was arrested for aggravated battery based on the bodily harm to Ertl's left forearm caused by defendant's bite. Defendant knew what happened and why he was arrested.

The indictment apprised defendant of the offense charged and specifically enough to present his defense. It was proved beyond a reasonable doubt that defendant struck Ertl with his mouth, causing pain to Ertl and redness and swelling of his arm. Accordingly, the argument that the distinction between "struck" and "bit" is a fatal error is, in and of itself, fatal.

### B. Fair Trial and Fair Hearing

Defendant next claims that the trial court relied on facts outside the record in entering judgment and sentencing. Defendant claims a

new trial is required because the trial judge revealed a bias against him during trial and the sentencing hearing. Alternatively, defendant maintains that this lack of a fair trial and fair sentencing hearing requires a reduction of his sentence of 18 months' probation.

■ Defendant bases these arguments on the trial court's statements both at judgment and sentencing in this case. The State counters that these issues have been waived because they were not raised in a posttrial motion by defendant. However, as discussed fully below, defendant was not properly admonished of his appeal rights by the trial court. Thus, he has not waived these arguments and we review them now.

■ It is assumed that for a bench trial, the trial judge will rely only on competent evidence in making a finding. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The defendant may overcome this assumption only if the record affirmatively demonstrates the contrary. 301 Ill. App. 3d at 8. A review of the record in this case indicates that the trial judge relied solely on the evidence presented at trial for judgment and on proper factors for sentencing defendant.

First, defendant has mischaracterized the testimony presented in this case. Several witnesses testified that backup of paramedic calls is a routine call for the police. In fact, the police were present at the scene of the incident as backup to the paramedics in this case. While no policy of police escorts for paramedics was established, several witnesses corroborated that such escorts indeed were routine.

In making his rulings in this case, the trial judge made observations on the fact that police escorts for paramedics are routine. The court also interjected that defendant's actions precipitating the melee were a shame and that similar actions by other parties were just the sort of action that require police backup. All evidence had already been presented against defendant and the court was making its ruling based on the evidence. The court highlighted the severity of defendant's crime by alluding to the police backup of paramedic calls.

Defendant claims that these comments are based on extra-record evidence and demonstrate a bias against defendant. A complete review of the trial court's comments argues to the contrary. First, testimony on the record outlined above corroborated the fact this was routine activity for the police. Further, the court explicitly stated that no matter what occurred after defendant's bite, the evidence showed beyond a reasonable doubt that defendant did knowingly bite a Chicago fire department paramedic causing him bodily harm. The court stated that, at that point, defendant had committed a crime and the police had a right to arrest him for aggravated battery. The record clearly demonstrates that the trial court properly relied on the facts in the case in finding defendant guilty and not some bias against defendant.

With respect to sentencing, the burden is on the defendant to demonstrate the sentence was in error to overcome the rebuttable presumption that the trial court's ruling was proper. *People v. Lindsay*, 263 Ill. App. 3d 523, 533 (1994). A trial court's sentencing decision is entitled to great deference and will not be disturbed absent a clear abuse of discretion. *Kolzow*, 301 Ill. App. 3d at 8. As noted above, the fact that some personal observations are added to the hearing by the trial court does not necessarily result in error. 301 Ill. App. 3d at 9.

In this case, following arguments by counsel in aggravation and mitigation, the trial court reiterated the same concerns to defendant. Next, the court specifically cited the mitigating factors argued by defendant and entered a sentence of 18 months' probation. While the trial court's observations are not favored by the law, the fact remains that the proper sentencing factors were reviewed and the court did not abuse its discretion by entering a sentence well within the statutory guidelines. See *People v. Steppan*, 105 Ill. 2d 310 (1985).

We must defer to the trial court's determination of sentence as it is well within the statutory guidelines. *Kolzow*, 301 Ill. App. 3d at 9. The statutes allow a sentencing range of probation to up to five years' imprisonment for aggravated battery. Ostensibly, the sentence of probation was not disproportionate to the crime. Further, given the trial court's explicit recitation of factors that it considered and the fact that defendant argued for probation, we do not see evidence of bias in the sentence of probation. It is clear to this court that the trial judge considered the proper evidence and factors in his judgments and defendant did not suffer an unfair trial.

### C. Rule 605(a) Admonishments

Defendant's third claim is that this case should be remanded because the trial court failed to properly admonish him pursuant to Rule 605(a) regarding his appeal rights and the steps necessary to challenge his sentence both at the trial and appellate courts.

Subsection (a)(3) of Rule 605 provides:

"(3) At the time of imposing sentence or modifying the conditions of the sentence, the trial court shall also advise the defendant as follows:

A. that the right to appeal the judgment of conviction, excluding the sentence imposed or modified, will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed;

B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a writ-

ten motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing, setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;

C. that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived; and

D. that in order to preserve the right to appeal following the disposition of the motion to reconsider sentence, or any challenges regarding the sentencing hearing, the defendant must file a notice of appeal in the trial court within 30 days from the entry of the order disposing of the defendant's motion to reconsider sentence or order disposing of any challenges to the sentencing hearing." 210 Ill. R. 605(a)(3).

In this case, following judgment on the sentence, the trial court admonished defendant as follows:

"And I would advise you you do have the right within thirty days from today's date to file a notice of appeal so the Appellate Court can review both the findings and sentence that I've imposed. If you cannot afford private counsel, I'll be glad to appoint counsel for you free of charge. Also, be glad to supply a free copy of the transcript the Court Reporter to the right has been taking down. The important thing is that you do nothing for more than thirty days you forevermore give up those rights."

The trial court did not properly admonish defendant of his rights as required by Rule 605(a). Defendant cites several cases where this court has ordered a case be remanded when a defendant has not been properly advised that a written postsentencing motion is required to preserve an appeal. See *People v. Mazar*, 333 Ill. App. 3d 244, 254-59 (2002); *People v. Bagnell*, 348 Ill. App. 3d 322, 327 (2004); *People v. Glenn*, 345 Ill. App. 3d 974, 984-85 (2004); *People v. Taylor*, 345 Ill. App. 3d 1064, 1082-83 (2004). Defendant also argues that the conflicting opinions cited by the State require remandment. *People v. Polk*, 349 Ill. App. 3d 760 (2004); *People v. Elders*, 349 Ill. App. 3d 573 (2004).

While the State admits to the improper admonishment, it argues that this case need not be remanded for proper admonishment. The State argues that *Mazar* has been overruled and that remand is required only where defendant has been prejudiced or had his rights violated by the incomplete admonishment. See *People v. Breedlove*, 213 Ill. 2d 509 (2004); *People v. Williams*, 344 Ill. App. 3d 334 (2003). Further, the State argues this court could review defendant's sentencing appeal rather than unnecessarily remand the case. See *People v.*

*Davis*, 145 Ill. 2d 240 (1991); *People v. Garner*, 347 Ill. App. 3d 578, 586 (2004).

We agree with the State. Defendant relies principally upon *Mazar* for his position. However, the State properly notes that *Mazar* was overruled by the Illinois Supreme Court and that strict adherence to Rule 605(a) is not necessarily required. See *People v. Henderson*, 217 Ill. 2d 449, 462-63 (2005), citing *People v. Breedlove*, 213 Ill. 2d 509 (2004). Accordingly, defendant's reliance on *Mazar* is misplaced. *Henderson*, 217 Ill. 2d at 463.

In *Henderson*, the court considered a trial court's failure to properly admonish a criminal defendant that a written motion to reconsider sentence was required to preserve that issue for appeal. *Henderson*, 217 Ill. 2d at 454. The defendant did not file such a motion, nor did he raise any actual sentencing issues in his appeal. Rather, the only issue raised was that he was not properly admonished by the trial court with respect to appealing his sentence. *Henderson*, 217 Ill. 2d at 454.

The court found the appellate court's decision in *People v. Williams* instructive in denying defendant's request for remand. *Henderson*, 217 Ill. 2d at 468, citing *Williams*, 344 Ill. App. 3d at 338-39. The court affirmed the proposition in *Williams* that remand for improper Rule 605(a) admonishments is not required unless a showing of prejudice or denial of real justice is made by defendant. *Henderson*, 217 Ill. 2d at 469; see also *People v. Radford,* 359 Ill. App. 3d 410, 421-22 (2005). Further, in *dicta*, the court noted that, in the event an incomplete admonishment is given, the appellate court could hear challenges to the sentence rather than remand the case. *Henderson*, 217 Ill. 2d at 468.

In *Garner*, defendant filed a posttrial motion challenging his sentence, but he claimed that remand was necessary due to an improper admonishment by the trial court under Rule 605(a). *Garner*, 347 Ill. App. 3d at 583. Defendant did not raise any issues that he could bring before the trial court and not the appellate court. The court found that Rule 605(a) does not require strict adherence and, in the interests of justice, absent a denial of real justice or showing of prejudice by defendant, appellate review is proper. *Garner*, 347 Ill. App. 3d at 586.

In this case, defendant's request for remand for proper admonishments is based solely on a strict interpretation of the rule. This argument rests on the overruled decision in *Mazar* and remand is not necessary on that ground. However, defendant's argument above claiming that the trial court was biased and did not review the proper evidence could be applied to this claim as well. Accordingly, we review the effect of the improper admonishment with respect to that claim.

We review questions concerning the applicability of supreme court rules *de novo. Garner*, 347 Ill. App. 3d at 583. In this case, defendant was not properly admonished, and, like the defendant in *Henderson*, he did not file a posttrial motion attacking his sentence. As in *Garner*, defendant does not raise any issues that he could bring before the trial court and not the appellate court. We find this case is similar to *Garner* and exactly the type of case the *Henderson* court referred to in *dicta* and should be reviewed here.

■ Although the trial court did not strictly comply with the requirements of Rule 605(a), this case need not be remanded to " 'elevate form over substance without serving the ends of real justice.' " *Henderson*, 217 Ill. 2d at 469, quoting *Williams*, 344 Ill. App. 3d at 339. Defendant raises issues with respect to his sentencing before this court that would be no different if he raised them before the trial court. Further, as detailed above, defendant's contentions regarding sentencing are intertwined with his claims that he did not receive a fair trial. It would be an exercise in futility to decide that issue and remand so defendant could raise the same issue before the trial court.

As noted in detail above, the record clearly shows that the trial court properly reviewed the facts and mitigating factors in favor of defendant. The sentence handed down by the trial court falls well within the guidelines for aggravated battery of a fireman. Defendant did not receive an excessive sentence. In fact, the sentence is exactly that which defendant argued for during the sentencing hearing. Given these facts, we do not feel the trial court's comments evidence a bias. Defendant's claims have been reviewed here and he has not been prejudiced or denied real justice. Defendant was properly sentenced and remand is unnecessary.

### D. Constitutionality of Section 5—4—3

■ Finally, defendant contends that the compulsory extraction and storage of his DNA violates his constitutionally protected rights. The trial court, pursuant to section 5—4—3 of the Unified Code of Corrections, ordered defendant give a blood sample for DNA analysis. Defendant claims this violates his right to be free from unreasonable searches and seizures guaranteed by the fourth amendment of the United States Constitution and article I, section 6, of the Illinois Constitution. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Specifically, defendant claims the ordered blood sampling does not fall within the narrow class of exceptions to the rule that individualized suspicion is required before a search is conducted.

In particular, defendant argues that the statute must meet the "special needs" test to overcome the requirement of individualized

suspicion. Defendant argues that even if the special needs test were met, this court must undertake a balancing test weighing the individual's privacy interest against the special needs of the program. Defendant claims this test also requires a finding that section 5—4—3 is unconstitutional.

We review the constitutionality of a statute *de novo*. *People v. Hall*, 352 Ill. App. 3d 537, 545 (2004). Section 5—4—3(a)(3.5) of the Code provides that any person convicted or found guilty of any offense classified as a felony under Illinois law may be ordered by a court to submit specimens of blood, saliva, or tissue to the Department of State Police for DNA analysis. 730 ILCS 5/5—4—3(a)(3.5) (West 2002). The purpose of this statute is to create a database of the genetic identities of recidivist criminal offenders. *People v. Garvin*, 349 Ill. App. 3d 845, 853, (2004), *appeal allowed*, 212 Ill. 2d 541 (oral arguments held on September 20, 2005).

In *Garvin*, this court upheld section 5—4—3, noting that all 50 states and the District of Columbia have enacted statutes mandating genetic marker testing and that numerous constitutional challenges from across the nation have been rejected. *Garvin*, 349 Ill. App. 3d at 853-54. Since *Garvin*, we have repeatedly rejected constitutional challenges to section 5—4—3. See *People v. Radford*, 359 Ill. App. 3d 410, 422-23 (2005); *People v. Jennings*, 364 Ill. App. 3d 473, 485-86 (2005); *People v. Redmond*, 357 Ill. App. 3d 256 (2005); *People v. Chamberlain*, 354 Ill. App. 3d 1070, 1075-76 (2005); *People v. Foster*, 354 Ill. App. 3d 564, 570-71 (2004); *People v. Butler*, 354 Ill. App. 3d 57, 62-69 (2004); *People v. Ramos*, 353 Ill. App. 3d 133, 141-54 (2004); *People v. Smythe*, 352 Ill. App. 3d 1056, 1061 (2004); *People v. Peppers*, 352 Ill. App. 3d 1002, 1004-08 (2004). Defendant has provided no basis for this court to depart from these holdings. Therefore, we reject his contentions and find that section 5—4—3 is constitutional.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

QUINN, P.J., and CAMPBELL, J., concur.