No. 2--02--0491                    filed: 1/24/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| | ) ) | No. 01--CF--330 |
| DEMETRIUS GLENN, | ) ) | Honorable Douglas R. Engel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE GROMETER delivered the opinion of the court:

Following a bench trial in the circuit court of De Kalb County, defendant, Demetrius Glenn, was convicted of six counts of drug-related offenses stemming from the delivery of cocaine and heroin within 1,000 feet of a church. Three counts were related to the delivery of less than one gram of a substance containing cocaine to an undercover officer, and the other three were related to delivery of less than one gram of a substance containing heroin. Defendant was sentenced to 10 years' imprisonment. Defendant previously appealed to this court, alleging three errors. First, he contended that trial counsel was ineffective for failing to move for the disclosure of an informant until after defendant testified at trial. Second, he argued that several of the counts of which he was convicted should be vacated because they are lesser included offenses and that multiple convictions violate the one-act, one-crime rule. Third, he asserted that he was not properly admonished

regarding how to preserve sentencing errors for appeal. We agreed with the latter two contentions, and, therefore, we affirmed in part, vacated in part, and remanded.

The State then appealed to our supreme court. While denying the State's petition for leave to appeal, the supreme court directed us to vacate our judgment and reconsider this case in light of its recent decision in People v. Henderson, No. 98887 (August 18, 2005). The parties have filed supplemental briefs addressing this issue. Accordingly, we hereby vacate our earlier decision in this matter and issue this one in its stead. Because the issues raised by defendant are distinct, we will discuss the evidence as it pertains to his various arguments.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that trial counsel was ineffective for failing to move for the disclosure of a police informant until after the trial had commenced. Defendant raised an entrapment defense. See 720 ILCS 5/7--12 (West 2000); People v. Placek, 184 Ill. 2d 370, 380-81 (1998). Defendant contends that he was entrapped by a woman he knew who was acting as an informant for the police. Defendant testified that he met the woman through his sister a short time before the incident leading to his arrest. The woman seemed to be attracted to defendant, and they "partied" together. Defendant testified that, on May 17, 2001, the date of the incident, the woman preyed on his attraction to her to induce him to procure drugs for Mark Nachman. She told defendant that Nachman was her brother. Nachman was, in fact, an undercover police officer.

According to defendant, the woman accompanied him and Nachman on the day of the incident. Before asking him to get drugs for Nachman, she joked with defendant, hugged him, and kissed him. She then directed defendant to places where drugs could be acquired. They were unable to obtain drugs at the first two locations, but were successful in obtaining crack cocaine at the third. Defendant testified that he made no profit on the transaction; however, he did ask Nachman if he

could keep a piece of cocaine, which he intended to smoke later. He acknowledged that the heroin was his and that he had acquired it before meeting Nachman that day. He denied having anything to do with the cutting or testing of the drugs. Defendant testified that he had stopped dealing drugs prior to the day of the incident. He acknowledged that he had a previous conviction of unlawful delivery of a controlled substance and also admitted prior drug use. Nachman asked defendant if he could contact defendant again, and defendant replied affirmatively. In resolving this issue, for reasons that we will explain below, we will accept defendant's version of the facts, as well as other evidence favorable to him adduced from other sources. We note that the testimony of the State's witnesses differed significantly from defendant's.

Defendant argues that he received ineffective assistance of counsel because his attorney failed to seek to ascertain the identity of the informant and to present her testimony at trial. To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); People v. Davis, 205 Ill. 2d 349, 364 (2002). A reasonable probability is one sufficient to undermine confidence in the result of the proceeding. People v. Morris, 335 Ill. App. 3d 70, 84 (2002). A claim of ineffective assistance of counsel may be disposed of on the prejudice prong of the test without first addressing whether counsel's performance was deficient. People v. Johnson, 128 Ill. 2d 253, 271 (1989). The burden is on the defendant to establish prejudice. People v. Richardson, 189 Ill. 2d 401, 411 (2000). We conclude that defendant has not sustained this burden.

As defendant raised the defense of entrapment, we must assess counsel's alleged ineffectiveness in terms of how it could have affected this defense. Defendant's claim of entrapment

is based upon the informant's use of his attraction to her, which, defendant asserts, allowed the informant to manipulate him into obtaining drugs. Entrapment requires that a defendant show both that the State improperly induced him or her to commit a crime and that he or she was not otherwise predisposed to commit the offense. Placek, 184 Ill. 2d at 380-81. In resolving this appeal, we will focus on the issue of predisposition. Several factors are relevant in assessing predisposition in drug cases, including the following: (1) the defendant's initial reluctance or willingness to commit the crime; (2) the defendant's familiarity with drugs; (3) the defendant's willingness to accommodate the needs of drug users; (4) the defendant's willingness to profit from the offense; (5) the defendant's current or prior drug use; (6) the defendant's participation in cutting or testing the drugs; and (7) the defendant's ready access to a supply of drugs. Placek, 184 Ill. 2d at 381.

Defendant faces a major hurdle in his attempt to establish prejudice. As he acknowledges, the record does not disclose what the informant's testimony would have been. This alone would normally be enough to defeat defendant's claim. See People v. Holman, 132 Ill. 2d 128, 167 (1989) (rejecting ineffectiveness claim where counsel failed to call a witness and there was nothing in the record indicating that the witness's testimony would be favorable to the defendant); People v. Markiewicz, 246 Ill. App. 3d 31, 47 (1993). Defendant argues, nevertheless, that "[t]he very failure to investigate and prepare for trial in a case where the informant is so pivotal should constitute the requisite prejudice." We do not agree. Prejudice simply cannot be presumed under ordinary circumstances (Johnson, 128 Ill. 2d at 271), and defendant's request, in essence, is that we presume prejudice from counsel's conduct. Furthermore, defendant's reliance on People v. Woods, 139 Ill. 2d 369 (1990), is misplaced. In that case, the court found prejudice despite having only limited detail regarding the potential testimony of an undisclosed informant. Woods, 139 Ill. 2d at 384-85. We note that the burdens of proof in Woods and this case are dramatically different. In Woods, the

burden was on the State to demonstrate that the error in question was harmless beyond a reasonable doubt. Woods, 139 Ill. 2d at 382, citing Chapman v. California, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967). Here, the burden is on defendant to show a reasonable probability that a different result would have been obtained. In the absence of information, the burden of proof is typically dispositive.

Defendant also attempts to show prejudice by asserting that the testimony of the informant may have corroborated his testimony and contradicted that of Nachman. As such, it might have enhanced defendant's credibility and diminished Nachman's. This argument is highly speculative, given that we do not know how the informant would have testified, and does not show any real probability that the result of the trial would have been different. See Holman, 132 Ill. 2d at 167. Moreover, assuming, arguendo, that the informant would have testified in the manner defendant suggests, his entrapment defense still would have failed. To demonstrate this, we will accept defendant's testimony as true and consider the issue of predisposition.

The first factor we must consider when assessing whether a defendant was predisposed to commit an offense, such that an entrapment defense is unavailable, is the defendant's reluctance or willingness to commit the crime. Placek, 184 Ill. 2d at 381. At trial, defendant testified that he had stopped dealing drugs prior to May 17, 2001. Nachman and the informant approached him on that day, and he told the two that he was done with dealing drugs. Defendant testified that he was initially unwilling to help them get drugs. However, shortly after introducing defendant and Nachman, the informant asked if defendant could "score" for her, and he replied "sure." Additionally, defendant told Nachman he could call defendant again. At best, this is extremely weak evidence of reluctance. Although he initially stated he was no longer dealing, he quickly agreed to assist the two to acquire drugs.

Second, defendant's familiarity with drugs was well established. Placek, 184 Ill. 2d at 381. He acknowledged that he had used crack cocaine in the past and that he had previously been convicted of delivery of a controlled substance. He also testified that he was in possession of heroin prior to meeting Nachman.

Third, his willingness to accommodate the needs of other users is demonstrated by the same facts that go to the first prong of the test. Placek, 184 Ill. 2d at 381. Upon being asked by the informant to "score," he agreed. Moreover, he at least accompanied Nachman and the informant to the source and actually went in to make the purchase. He told the officer that it was all right to call him in the future. Additionally, he testified that he might have intended to give the piece of crack he got from Nachman to someone else to smoke.

The fourth factor is whether defendant was willing to profit from the offense. Placek, 184 Ill. 2d at 381. Defendant did not receive any monetary profit from the transaction. However, he did ask for and receive a piece of crack cocaine. While this is minimal evidence of a willingness to profit, it does weigh against defendant.

Fifth, we must consider defendant's prior and current drug use. Placek, 184 Ill. 2d at 381. He wanted a piece of crack to smoke, and he acknowledged having been a user. He also was in possession of heroin prior to meeting Nachman on the day of the incident.

The sixth factor to consider is whether defendant participated in cutting or testing the drugs. Placek, 184 Ill. 2d at 381. He did not. This factor would seem to weigh heavily in favor of predisposition where a defendant does participate in cutting or testing. However, its absence does not necessarily militate strongly for an opposite conclusion, particularly where, as here, there was no opportunity for defendant to engage in such actions.

Finally, the seventh factor is whether defendant had ready access to a supply of drugs. We note that defendant had heroin before his encounter with Nachman, which he presumably got from somewhere. Further, he stated that Nachman could call him again, indicating that he would be able to provide drugs in the future.

In sum, only the first and sixth factors weigh in favor of defendant. As explained above, given the circumstances of this case, neither is very compelling. Regarding the first, defendant apparently displayed some reluctance to help Nachman obtain drugs; however, even on defendant's own testimony, this reluctance was minimal. Perhaps the sixth could be dispositive in a close case, but it is insufficient to prevail on its own. As the trial court noted, "the fact that [defendant] was trying to impress a girl by getting her cocaine certainly is not entrapment." Beyond the fact that the informant "preyed" on his attraction to her, defendant points to nothing to sustain his claim of entrapment, and he even acknowledges, "I wouldn't actually say she talked me into it."

Accordingly, we find that, assuming that counsel's performance was deficient in failing to move for disclosure of the informant's identity in a timely fashion, defendant has not shown that he suffered prejudice as a result. Defendant cannot, therefore, make out a claim of ineffective assistance of counsel. Johnson, 128 Ill. 2d at 271.

## II. WHETHER ALL SIX CONVICTIONS CAN STAND

Defendant next argues that he was improperly convicted of six drug-related offenses as a result of his encounter with Nachman. Count I charged that defendant committed the offense of unlawful delivery of cocaine. 720 ILCS 570/401(d) (West 2000). Count II alleged that defendant delivered cocaine within 1,000 feet of a church. 720 ILCS 570/407(b)(2) (West 2000). Count III alleged that defendant possessed less than 15 grams of a substance containing cocaine. 720 ILCS 570/402(c) (West 2000). Count IV charged that defendant delivered a substance containing heroin.

720 ILCS 570/401(d) (West 2000). Count V alleged that defendant delivered heroin within 1,000 feet of a church. 720 ILCS 570/407(b)(2) (West 2000). Count VI charged defendant with possession of less than 15 grams of a substance containing heroin. 720 ILCS 570/402(c) (West 2000). Defendant contends that counts I, III, IV, and VI are, in fact, lesser included offenses in the crime of delivery of a controlled substance within 1,000 feet of a church. 720 ILCS 570/407(b)(2) (West 2000). Thus, according to defendant, they must be vacated. The State does not contest defendant's argument as it pertains to count VI.

In determining whether these offenses must be vacated, the first step is to inquire as to whether defendant's conduct constituted separate acts or a single act. People v. Rodriguez, 169 Ill. 2d 183, 186 (1996). If the conduct compromised more than one act, the next step is to determine whether any of the offenses that defendant was convicted of constitute lesser included offenses. Rodriguez, 169 Ill. 2d at 186; see also People v. King, 66 Ill. 2d 551, 566 (1977) ("Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses"). If either step yields an affirmative answer, the conviction in question cannot stand. Rodriguez, 169 Ill. 2d at 186. Moreover, it is well established that possession of a controlled substance is a lesser included offense of delivery of a controlled substance. People v. Lewis, 83 Ill. 2d 296, 302 (1980).

The State contends that convictions of both the possession and delivery of the cocaine can stand because defendant asked for a piece of the cocaine, which he retained, while the rest was delivered to Nachman. Such an interpretation ignores the reality that this was one transaction where defendant acquired some cocaine and delivered the bulk of it to Nachman. Obviously, defendant possessed all of the cocaine prior to giving it to Nachman. After the transaction, he continued to possess a small portion of it. We attach no significance to the fact that defendant briefly turned over

all of it to Nachman and then, almost immediately, a small quantity was returned to him. It was the same cocaine, it was one transaction, and therefore it was one act.

The State also argues that delivery within 1,000 feet of a church (720 ILCS 570/407(b)(2) (West 2000)) is a sentence enhancer of the crime of delivery of a controlled substance (720 ILCS 570/401(d) (West 2000)), rather than a separate offense. Assuming, for the sake of argument, that the State is correct, this argument is beside the point. Defendant stands convicted of six counts, two of which are of delivery and two of which are of delivery within 1,000 feet of a church for the two substances delivered. As such, the lesser counts cannot stand.

Therefore, we vacate defendant's convictions of counts I, III, IV, and VI and the sentences imposed on them. We remand this cause so the trial court may enter an appropriate order reflecting two convictions of delivery of a controlled substance within 1,000 feet of a church.

### III. SUPREME COURT RULE 605(a)

Defendant's final argument is that he was not properly admonished as to how to preserve sentencing issues in accordance with Supreme Court Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001). Indeed, defendant was not advised that any issue not raised in a motion to reconsider would be waived (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a)(3)(C), eff. October 1, 2001), and he did not file any such motion. The State agrees that defendant received insufficient admonitions; however, it counters that no remand is necessary because defendant suffered no prejudice. In our original opinion (People v. Glenn, 345 Ill. App. 3d 974 (2004)), we accepted defendant's argument and further held that strict compliance with Rule 605(a) was required and the proper remedy for a failure to comply with this rule was remand, as it is for Rule 605(b) (see People v. Breedlove, 213 Ill. 2d 509, 520 (2004); People v. Perper, 359 Ill. App. 3d 863, 865 (2005)). In People v. Henderson, slip op. at 13, our

supreme court rejected the notion that Rule 605(a) required strict compliance and held that a remand was necessary only where the defendant was prejudiced or denied real justice. Subsequently, the supreme court, in an exercise of its supervisory authority, directed us to vacate our earlier opinion in this case and reconsider in light of Henderson. We now do so.

It is now settled law that a defendant must show that he or she was prejudiced or denied real justice as a consequence of a trial court's failure to admonish that defendant properly under Rule 605(a). What remains somewhat unclear is the meaning of the phrase "prejudiced or denied real justice." In Henderson, slip op. at 14-15, the supreme court found that the defendant had failed to make such a showing where the defendant raised absolutely no issue pertaining to his sentencing. Henderson, thus, provides clear guidance as to the meaning of the phrase only in that situation.

Conversely, in this case, defendant did raise a sentencing issue in his original brief. Defendant pointed to the trial judge's finding that the threat of serious harm to others was an aggravating factor. Defendant then cited several cases holding that the threat of harm to others should not be considered as an aggravating factor in drug delivery cases because that factor was already accounted for when the legislature classified the offense and set the range of potential punishment. See, e.g., People v. McCain, 248 Ill. App. 3d 844, 851-52 (1993); People v. Maxwell, 167 Ill. App. 3d 849, 852-53 (1988). Where a trial court considers an improper factor in aggravation, a case must be remanded unless it appears from the record that the weight placed upon that factor was so insignificant that it did not lead to a greater sentence. People v. Beals, 162 Ill. 2d 497, 509-10 (1994). If a court of review is unable to ascertain the weight attributed to an improper factor, the proper remedy is a remand. People v. Bourke, 96 Ill. 2d 327, 332 (1983); McCain, 248 Ill. App. 3d at 853. The State, in fact, argues that the trial judge's finding was but one brief remark that "did not have a very great bearing on his sentencing decision." According to the State, it is

insufficient for defendant to simply point to some possible issue to avoid <u>Henderson</u>'s requirement that he show prejudice or the denial of real justice. We agree with this latter contention of the State; however, we disagree that the issue defendant raises lacks merit.

Simply pointing out some issue that could be raised without being deemed frivolous, no matter how futile it ultimately turns out to be, would deprive <u>Henderson</u> of any real content. In virtually every case, there is some issue that the parties could contest without running afoul of Supreme Court Rule 137. 155 Ill. 2d R. 137. Thus, a defendant cannot avoid <u>Henderson</u> with a simple recitation of a nonfrivolous issue. On the other hand, whatever a defendant need show to demonstrate prejudice or a denial of real justice, it must be less than that which is necessary to show plain error. Requiring a showing of that magnitude would deprive Rule 605(a) of any content. After all, a defendant can seek plain error review of virtually any error, albeit often unsuccessfully. Remedying the lack of proper admonishments, which resulted in the potential waiver of an issue, by requiring a defendant to establish plain error is no remedy at all, as that is the course a defendant who has, in fact, waived an issue must follow. The outer parameters, then, of the showing a defendant must make are clear. Parenthetically, we do not believe that the <u>Henderson</u> court's reference to plain error (<u>Henderson</u>, slip op. at 10, quoting <u>Breedlove</u>, 213 Ill. 2d at 521-22) was intended to suggest that plain error review is an adequate remedy where a defendant is improperly admonished under Rule 605(a); rather, the court was merely distinguishing Rule 605(b). We will therefore look to the balance of <u>Henderson</u> for guidance.

In <u>Henderson</u>, the supreme court gave courts of review an indication that they possess a great deal of discretion in these matters in determining how to proceed. In that case, the court wrote:

"If defendant *had* <u>presented</u> actual sentencing challenges in his appeal, the appellate court would at least have been <u>alerted to</u> the existence of these issues. The court then could have

taken <u>whatever actions it deemed appropriate</u>, including hearing the challenges itself or remanding them to the trial court."  (Emphasis added and omitted.)  <u>Henderson</u>, slip op. at 15.

This passage states that the defendant must "present" an issue on appeal so that the appellate court will be "alerted to" the issue.  Thus, the court appears to have contemplated something less than full briefing of the issue, at least in some situations.  However, by stating that an appellate court could hear the issue itself, it implied that a full, plenary resolution of the issue might be appropriate under certain circumstances.  Most significantly, the court charged that a court such as ours may take "whatever action it deem[s] appropriate."  The power to take whatever action is appropriate suggests discretion.

Now, as to how great a showing a defendant must make to demonstrate prejudice or a denial of real justice, we can conclude only that it depends upon the circumstances and that such inquiries necessarily will be practical and situation specific.  Given the discretion to take whatever action is appropriate by the supreme court, we can conclude only that a defendant must demonstrate to us that he or she has been denied some real opportunity to litigate something of substance and that some remedy is necessary--most likely an opportunity to be heard on that issue.  After all, by vesting us with discretion, the supreme court presumably wanted us to exercise it to correct something that needs correcting.  It follows, then, that a defendant must "alert" us to something that requires some action.  While we may not be able to define the standard a defendant must meet more precisely in this case and think it wise to allow such a standard to develop as courts confront more cases such as this one, we do believe that the showing made by defendant in this case is sufficient to satisfy that standard.

Some additional guidance can be found in <u>Henderson</u>. In that case, the supreme court cited approvingly the First District's resolution of <u>People v. Polk</u>, 349 Ill. App. 3d 760 (2004). <u>Henderson</u>, slip op. at 16. In <u>Polk</u>, where the defendant was not properly admonished pursuant to Rule 605(a), the defendant asserted that his sentence was excessive given the factors in mitigation and that this issue would be waived since it was not raised in a timely filed, written motion to reconsider his sentence. The State countered that the defendant was not prejudiced, because all of the factors in mitigation advanced by the defendant had, in fact, been presented to and considered by the trial court. The <u>Polk</u> court found that the fact that the defendant had raised a specific issue before it was enough to distinguish that case from cases where the defendant had not shown prejudice or the denial of real justice, such as <u>People v. Williams</u>, 344 Ill. App. 3d 334 (2003), and <u>People v. Garner</u>, 347 Ill. App. 3d 578 (2004). <u>Polk</u>, 349 Ill. App. 3d at 765-66. Like the defendant in <u>Polk</u>, and unlike the defendant in <u>Henderson</u>, in this case, defendant has set forth a substantial issue regarding his sentence. That is, defendant has demonstrated that he was prejudiced by the trial court's failure to properly admonish him.

Nevertheless, the State argues that a remand is not necessary and suggests that we should resolve the error on the merits against defendant. It claims that a remand would be a waste of time and judicial resources. Certainly, such considerations are entitled to some weight (see <u>People v. Burdine</u>, No. 1--03--3529 (November 10, 2005)). We partially agree with the State. As noted, where a trial court relies upon an improper factor in sentencing and a court of review cannot ascertain from the record whether the consideration of that factor affected the sentence, the cause must be remanded for resentencing. <u>Bourke</u>, 96 Ill. 2d at 332 ("Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause <u>must</u> be remanded for resentencing" (emphasis added)); <u>McCain</u>, 248 Ill. App. 3d at 853 ("Where a trial court has

considered an improper aggravating factor in sentencing, and a reviewing court is unable to determine the weight given to an improper factor, the cause <u>must</u> be remanded for resentencing (emphasis added)). However, defendant asks that the cause be remanded only so that he may file a motion to reconsider his sentence. Such a remand would indeed be a waste of judicial resources in this case, simply because the trial judge who imposed the sentence, that is, the only person to really know how much weight, if any, was placed on the improper factor, has retired. Thus, a trial judge hearing this case on remand would be in the same position that we currently are--trying to ascertain how much weight was attributed to the improper factor, from a cold record.

However, we disagree with the State's assertion that the issue defendant raises lacks merit. The State argues that the trial court's finding regarding the threat of harm to others did not affect defendant's sentence. We, however, cannot say with any degree of certainty that this proposition is true. We disagree with the State's characterization of the trial court's remark as "very brief and passing." Though the trial court's mention of this factor was brief, it was hardly passing. Indeed, the trial court made an express finding that the harm threatened to others was an aggravating factor. Moreover, it made this finding almost immediately (five transcribed sentences) before it sentenced defendant. The State also asserts correctly that the trial court accepted its argument that when an offender repeatedly offends, the sentence he or she receives should be greater than an earlier sentence. Defendant had previously been sentenced to eight years for an earlier offense, and this time the trial court imposed a sentence of 10 years' imprisonment. This argument does not establish that the trial court did not place any weight on the improper aggravating factor; quite simply, nine years is also more than eight. Because we cannot determine what weight, if any, the trial court placed on an improper aggravating factor, we cannot allow defendant's sentence to stand.

Accordingly, we believe that the proper resolution of this appeal is to simply vacate defendant's sentence and remand so that defendant can be resentenced. Given the discretion vested in us by our supreme court in resolving these appeals (<u>Henderson</u>, slip op. at 15), and the power given us by Supreme Court Rule 366 to "grant any relief, including a remandment, *** that the case may require" (155 Ill. 2d R. 366(a)(5)), this result is one that we have clear authority to order. Moreover, it serves the interests of both judicial efficiency and justice. Where, as here, it appears from the record that the trial court did consider an improper factor and it is impossible to remand so that the trial judge who imposed the sentence can clarify his reasoning, the only way to ensure that defendant has not been prejudiced is to vacate the sentence and begin anew. Regarding judicial efficiency, a new trial judge hearing a motion to reconsider defendant's sentence would engage in essentially the same inquiry that we have just conducted. There simply is no need to duplicate this effort.

### III. CONCLUSION

In light of the foregoing, we affirm defendant's two convictions of delivery of a controlled substance within 1,000 feet of a church and we vacate the remainder of the convictions. We also vacate defendant's sentence. This cause is remanded so that the trial court may conduct a new sentencing hearing and resentence defendant.

Affirmed in part and vacated in part; cause remanded with directions.

BYRNE and KAPALA, JJ., concur.