2024 IL App (2d) 230262-U
No. 2-23-0262
Order filed June 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CM-2238 |
| SCOTT S. MRIZEK, | ) ) ) | Honorable Bianca Camargo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Schostok and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the domestic battery count of which defendant was convicted alleged that he threw keys at the victim and pushed her, the fact that the State proved only that he pushed the victim did not create a fatal variance between the charge and the proof.  Either alleged act would have been sufficient in itself to support a domestic battery conviction.  Moreover, the count alleged the essential elements of the offense and the variance related only to the particular manner by which defendant committed domestic battery.  Finally, the phrasing of the count did not prejudice defendant in preparing his defense.

¶ 2    Defendant, Scott S. Mrizek, appeals from his conviction, following a bench trial, of

domestic battery based on insulting or provoking contact (720 ILCS 5/12-3.2(a)(2) (West 2020)).

Defendant contends that his conviction must be reversed because the complaint alleged he

committed two acts of contact with the victim but the trial court found that the State proved that he committed only one of the acts. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On December 6, 2021, defendant was charged by complaint with domestic battery (720 ILCS 5/12-3.2 (West 2020)). The complaint bore the caption of the circuit court of Kane County and included defendant's name, address, phone number, date of birth, physical description, and driver's license number. It also included the complainant's name, address, and phone number.

¶ 5     The complaint was not expressly subdivided into counts, but there were two preprinted boxes for "Alleged Offense," each indicating "Domestic Battery" and citing a different subsection of the domestic battery statute. See 720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2020). The complaint provided the date of the offense and further stated:

> "The within named complainant states under oath that on or about the date set forth
> herein, in said County, the defendant committed the offense set forth herein, in violation
> of the Chapter and Section of the Illinois Compiled Statutes, or the Ordinances of the City
> or Village, set forth herein, in that said defendant:
> 720 ILCS 5/12-3.2(a)(1)
> knowingly caused bodily harm to [the victim], a family member of the defendant, in that
> said defendant threw keys at [the victim], which hit her chest and caused bruising. Said
> defendant then pushed [the victim] onto the ground with his hand causing a scratch behind
> her left ear and a broken fingernail.
> 720 ILCS 5/12-3.2(a)(1) [*sic*]
> knowingly made physical contact of an insulting nature with [the victim], a family member
> of said defendant, in that said defendant threw keys at [the victim], which hit her chest and

caused bruising. Said defendant then pushed [the victim] onto the ground with his hand causing a scratch behind her left ear and a broken fingernail."

¶ 6 The matter proceeded to a bench trial. The State presented testimony from the victim and two police officers. Defendant testified on his own behalf. We summarize the relevant evidence.

¶ 7 The victim testified that she and defendant had two children—a 16-year-old son and a 12-year-old daughter. On December 2, 2021, at approximately 10 a.m., she and defendant were at home and had an argument about their son. During the argument, defendant indicated that he wanted a divorce. He then left the house. The victim telephoned defendant and told him that she too wanted a divorce and that she wanted to talk. Defendant returned home at 11:30 a.m.

¶ 8 According to the victim, when defendant returned, they began to discuss getting a divorce. Defendant was seated on a chair in the kitchen, and the victim was standing about 15 feet away, in front of the sink, facing defendant. The victim was wearing only a nightgown and holding a cup of coffee. While they were talking, defendant picked up his keys from the kitchen table and threw them at her. The key ring contained about 20 keys and several additional items, including "a short mallet-type *** heavy-weighted *** defensive weapon" and "a Boy Scout can opener." According to the victim, the keys struck her "right chest." Defendant then "immediately charged" at her. She "backed up," and defendant "put his hands around [her] neck." They ended up in the dining room. Defendant was "holding and shoving, like pushing." Defendant then "shoved [her] down." The victim ended up between the dining room table and the wall. Defendant proceeded to "swipe" the items that were on the dining room table on top of her, which included "makeup, blow dryers, curling irons, [and] plastic containers that hold makeup." She testified that "the breath was knocked out of [her]" and she "was scared." About five minutes later, after the victim helped

defendant pack a bag and put socks on (he was physically limited because of recent surgery), defendant left the home.

¶ 9    The State introduced into evidence nine photographs of the victim's alleged injuries. The victim testified that she had taken the photographs. People's exhibit Nos. 1 through 5 depicted a bruise on the victim's chest "from the keys." People's exhibit No. 6 depicted some "light" bruising on the victim's hand "[f]rom the shoving and the falling and the grabbing." People's exhibit No. 7 depicted the victim's wrist with "some light bruising and hand marks from the scuffle." People's exhibit Nos. 8 and 9 depicted a scratch behind the victim's ear caused when "[defendant] put his hands around [the victim's] neck." The victim believed the scratches were "behind [her] right ear." In addition to the photographed injuries, the victim testified that one of her acrylic nails "broke off" and that this "[did not] feel great." The victim testified that, in addition to the injuries, she also felt "[h]eartbroken, shame, humiliation, scared, fear, frantic, upset."

¶ 10    Aurora police officer Jonathan Flores testified that, on December 3, 2021, at about 7:30 p.m., the victim made an in-person report of domestic violence at the Aurora police station. Flores interviewed her. The victim advised Flores of her injuries, and Flores observed a bruise on the victim's chest, a scratch behind the victim's ear, and "discoloration on her skin, her hand maybe from the coffee." A female officer took photographs of the victim's injuries. Flores identified People's exhibit Nos. 1 through 9 as photographs of the victim depicting "[t]he bruising, discoloration with the bruising, and *** a laceration or scratch."

¶ 11    On cross-examination, Flores testified that some of the photographs were taken by the victim and some by a female police officer, but he could not say "which ones were which." Flores identified People's exhibit No. 2 as a photograph of a bruise on the left side of the victim's chest. Flores never saw the right side of the victim's chest. Flores identified People's exhibit No. 9 as a

photograph of the victim's left ear. Flores never saw the victim's right ear. Flores testified that, based on the photographs, he could not tell if there were any injuries to the victim's hands. He stated that the hands had "a skin tone difference" but he did not "know if it was from the coffee."

¶ 12    Aurora police officer Antonio Piscopo testified that, on December 3, 2021, he and his partner interviewed defendant as a suspect in a domestic battery. Defendant told the officers that, at about 10:30 a.m. on December 2, 2021, he argued with the victim concerning their son. Defendant stated that, during the argument, "he had grabbed a set of keys and had thrown it at [the victim] and then two-hand pushed [the victim]." Defendant stated further that, "after the initial push, *** [the victim] had backed away and fell down while she was holding some hot coffee and that the coffee had [fallen] on top of her[ ]." Defendant advised the officers that he did not have any injuries. Piscopo arrested defendant.

¶ 13    On cross-examination, Piscopo testified that he recalled defendant telling him that the keys struck the victim when he threw them at her. Piscopo agreed that, had defendant told him that the keys struck the victim, he would have included it in his police report. Piscopo could not recall whether he included the information in his report. After refreshing his recollection with the report, Piscopo testified that he did not put anything in the report about the keys hitting the victim.

¶ 14    At the close of the State's evidence, defendant moved for a directed finding. The trial court denied the motion.

¶ 15    Defendant testified that, while arguing with the victim about their son, he became "frustrated and [he] threw [his] keys at the kitchen cabinet." The keys hit the cabinets above the countertop. He was about four feet away from the victim when he threw the keys. After he threw the keys, he stood up and "charge[d]" the victim. The victim "backed into the dining room area." Defendant testified: "By the time I got to her—I didn't walk well, and I kind of hitched and I did

make contact with her, but I didn't push or shove her. She tripped—while she was retreating, she tripped over her makeup cases." He further explained: "I couldn't stop myself in time. I did make contact with her." Defendant testified that he had had hip replacement surgery and was having some issues because of it. He agreed that he "put both [of his] hands up with [his] palms up" and made contact with the victim. He saw the victim trip over the makeup cases and fall. He sat back down. He was "upset that she tripped" and he "felt bad."

¶ 16 After the defendant rested, the State recalled Piscopo. Piscopo testified that, when they spoke, defendant did not mention any medical condition. Piscopo also did not notice anything unusual about how defendant walked. Defendant did not mention anything about kitchen cabinets; defendant told him that the keys struck the victim. Defendant described "a two-hand pushing motion[ ] but didn't demonstrate it ***." Defendant did not mention makeup cases. On cross-examination, Piscopo agreed that defendant did not say that "he pushed [the victim] down." Rather, defendant told him that the victim "backed up and fell down."

¶ 17 The trial court found defendant guilty on count II (insulting or provoking) and not guilty on count I (bodily harm). Before issuing its ruling, the trial court noted that the complaint contained "several [']ands['] in each count for bodily harm as well as physical contact" and that it was "almost written in paragraph form of the several things that the State alleges that the defendant did." After finding that the State proved the domestic relationship beyond a reasonable doubt, the court then addressed the "two incidents"—"keys to the chest" and "the push."

¶ 18 The trial court first considered the evidence related to the "keys to the chest" incident. The court specifically noted that, although Piscopo mentioned in his police report that defendant said he threw the keys at the victim, Piscopo did not mention that defendant said the keys hit the victim. The court found incredible Piscopo's testimony that he independently recalled that defendant told

him that the keys struck the victim. The court also noted that the photographic evidence contradicted the victim's testimony. (Although the court did not specify the nature of the contradiction, we note that the victim testified that the keys struck her right chest but that the photographs showed bruising to her left chest. In addition, the victim testified that she had a scratch under her right ear whereas the photograph depicted her left ear.)

¶ 19    The trial court next considered the evidence related to "the push." The court noted the victim's testimony that defendant charged at her and put his two hands on her neck and chest area and that she fell backward. The court noted that the victim felt scared. The court found that the victim would not have fallen if defendant had not pushed or charged at her. The court also noted defendant's testimony that he was angry and placed his hands on the victim's chest. The court further noted that, although defendant testified that it was an accident, he never said that to the police. The court also noted defendant's acknowledgment "about messing up and doing wrong."

¶ 20    The trial court concluded:

> "I think it gets a little tricky just on the way the complaint's written, but as it relates to bodily harm, I'm going to find the defendant not guilty, but as it relates to insulting or provoking contact, I'm going to find him guilty, based on the push."

¶ 21    The case was continued for posttrial motions and a sentencing hearing.

¶ 22    On July 10, 2023, defense counsel presented the trial court with a posttrial motion that he mistakenly believed had been filed electronically. The State asked that the motion be stricken as untimely. The trial court denied the State's request and allowed defendant to file the motion *instanter*.[1]  When the court invited argument on the motion, defense counsel argued that the

---

[1]The posttrial motion is not included in the record.

complaint alleged "that several acts were committed including the throwing of keys at the alleged victim in this case and striking her which was insulting and provoking and then doing some other acts." According to counsel, because the State failed to prove that defendant committed all the alleged acts, defendant could not be found guilty.

¶ 23    The trial court denied the motion:

"I do recall the testimony and evidence that was presented at the bench trial. I did find the complaining witness credible as it relates to the testimony about being pushed. I think that what lended to the credibility was when the defendant testified and ultimately and not with those specific words but also indicated that she—or that the defendant did, in fact, push the complaining witness, I don't think that they are inconsistent with each other despite the other rulings that I made, so at this time I am going to deny the motion for a new trial."

¶ 24    The trial court sentenced defendant to 12 months of conditional discharge. This timely appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    Defendant contends that the evidence at trial was insufficient to support his domestic battery conviction because the complaint alleged that defendant committed domestic battery by committing two acts—throwing keys at the victim and pushing the victim—but the State proved only one act. According to defendant, "all the [alleged] acts are material elements of the offense" and that, without proof of both acts, he cannot be found guilty.[2]

---

[2]Defendant does not contend that the State failed to prove beyond a reasonable doubt any of the required elements of domestic battery. He argues only that, because the State did not prove both charged acts, he cannot be found guilty of domestic battery. Accordingly, we do not consider

¶ 27    "[A] defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him." *People v. Espinoza*, 2015 IL 118218, ¶ 15; 725 ILCS 5/111-3(a) (West 2020).  Per section 111-3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(a) (West 2020)), the written charging instrument must state (1) "the name of the offense," (2) "the statutory provision alleged to have been violated," (3) "the nature and elements of the offense," (4) "the date and county of the offense," and (5) "the name of the accused."  See *People v. Collins*, 214 Ill. 2d 206, 219 (2005).

¶ 28    It is well-settled that "[t]he State 'must prove the essential elements of the charging instrument.' "  *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 67 (quoting *People v. Rothermel*, 88 Ill. 2d 541, 544 (1982)).  "For a variance between the charging instrument and the proof at trial to be fatal, the difference 'must be material and be of such character as may mislead the defendant in making his or her defense, or expose the defendant to double jeopardy.' "  *Id.* (quoting *People v. Maggette*, 195 Ill. 2d 336, 351 (2001)).

¶ 29    Contrary to defendant's framing of the issue, there is nothing improper *per se* about a charging instrument alleging more than one act.  Charging instruments routinely charge multiple acts and avoid confusion by assigning different acts to different counts.  When properly framed, the issue here is that the specific count of which defendant was convicted alleged more than one act yet the trial court found that the State proved only one of those acts.

¶ 30    "[I]mmaterial matters, or matters which may be omitted from an indictment without rendering it insufficient or doing damage to the material averments, may be regarded as

---

whether the evidence was otherwise sufficient to prove defendant guilty beyond a reasonable doubt of domestic battery based on the push.

surplusage." (Internal quotations omitted.) *Id.* "Where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage." *Collins*, 214 Ill. 2d at 219; see also *People v. Simpkins*, 48 Ill. 2d 106, 110-11 (1971) (where the defendants were charged with mob action in that they disturbed the peace "by firing a revolver," but the evidence showed that they disturbed the peace differently, the phrase "by firing a revolver" was surplusage).

¶ 31 In addition, where an offense can be committed by numerous acts, " 'a variance between the act named in the indictment and the act proved will not be fatal.' " *Lattimore*, 2011 IL App (1st) 093238, ¶ 69 (quoting *People v. Burdine*, 362 Ill. App. 3d 19, 24 (2005), and finding no fatal variance where the indictment charging aggravated battery alleged that the defendant caused bodily harm by striking the victim but the evidence established instead that the defendant caused the victim to be struck; the variance related only to the manner in which the defendant caused bodily harm); see *Simpkins*, 48 Ill. 2d at 110-11 (no fatal variance where the defendants were charged with disturbing the peace by firing a revolver but were found guilty based on different acts); *People v. Taylor*, 84 Ill. App. 3d 467, 470 (1980) (no fatal variance where the defendant was charged with obstructing a peace officer by pushing or shoving him but the evidence established only that she pulled the officer's hair).

¶ 32 Section 12-3.2(a)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/12-3.2(a)(2) (West 2020)) sets forth the necessary elements of domestic battery as follows:

"(a) A person commits domestic battery if he or she knowingly without legal justification by any means:

\*\*\*

     (2) Makes physical contact of an insulting or provoking nature with any

  family or household member."

Count II of the complaint alleged that defendant

  "knowingly made physical contact of an insulting nature with [the victim], a family

  member of said defendant, in that said defendant threw keys at [the victim], which hit her

  chest and caused bruising.  Said defendant then pushed [the victim] onto the ground with

  his hand causing a scratch behind her left ear and a broken fingernail."

¶ 33 Here, count II contained all essential elements of the offense of domestic battery. Nevertheless, defendant contends that, because the State alleged that defendant both "threw keys" and "pushed" the victim, his conviction cannot stand without proof of both acts.  We disagree. Although count II presented the incident as a progression of two acts, they were separable, and each would have been sufficient, standing alone, to support a domestic battery conviction under section 12-3.2(a)(2) of the Criminal Code.  Defendant does not argue otherwise.  Thus, removing the allegation that defendant threw keys at the victim before he pushed her would not render count II insufficient, as all essential elements would undoubtedly remain.  Accordingly, the language alleging the key throwing may be regarded as surplusage.

¶ 34 Moreover, we note that defendant is taking issue with the *manner* in which he "[m]a[de] physical contact of an insulting or provoking nature."  *Id.*  He seems to suggest that the "manner" included both the throwing of the keys and the push.  However, as noted above, a variance related to the particular manner by which defendant committed domestic battery is not fatal.  See *Simpkins*, 48 Ill. 2d at 111; *Taylor*, 84 Ill. App. 3d at 470; *Lattimore*, 2011 IL App (1st) 093238, ¶ 70.

¶ 35 Defendant asserts generally that a variance is "error" if it "misleads a [d]efendant in the making of his defense" or "hinders the [d]efendant in the intelligent presentation of his case."  He

claims that he relied on the "[the State's] wording [of the complaint] that all the acts create the insulting and provoking nature of the battery," but he does not explain how this reliance affected his defense. Indeed, counsel defended against each factual allegation independently, arguing in closing both that defendant did not hit the victim with the keys and that defendant's act of pushing the victim was "not knowing because he's got the hitch." Thus, there is no indication that any additional language in the complaint caused defendant to proceed with a different defense or to omit any evidence bearing on his innocence.

¶ 36    We note too that defendant does not argue that any variance exposed him to double jeopardy. Indeed, any such argument would be meritless. As noted, the indictment (1) named the offense, (2) cited the statutory provision allegedly violated, (3) set forth the nature and elements of the offense, (4) noted the date and county of the offense, and (5) listed defendant's name. See 725 ILCS 5/111-3(a) (West 2020). Thus, if the State attempted a future prosecution based on the incident, defendant could show from the trial court record that there was a prior prosecution based on the same facts. See *Lattimore*, 2011 IL App (1st) 093238, ¶ 71.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 39    Affirmed.