NO. 4-06-1113          Filed 7/29/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JOEL WILLIAMS, | ) | No. 06CF351 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles G. Reynard, |
| | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 2006, a jury found defendant, Joel Williams, guilty of aggravated battery (720 ILCS 5/12-4(b)(1) (West 2006)) and domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2006)) and not guilty of interfering with reporting domestic violence (720 ILCS 5/12-6.3(a) (West 2006)). In September 2006, the trial court sentenced defendant to five years' imprisonment for aggravated battery followed by a two-year term of mandatory supervised release (MSR) and three years' imprisonment for domestic battery followed by a one-year term of MSR.

Defendant appeals, arguing (1) the trial court erred by admitting into evidence the victim's written statement to rebut defendant's claim that the victim was intoxicated on the night in question; (2) the court's response to a jury question was incorrect and inconsistent with the charging instrument; (3) defendant's conviction for domestic battery violates the one-act, one-crime rule because the jury instructions did not apportion the

acts that defendant allegedly committed; and (4) the court erred in sentencing defendant to two years' MSR on his aggravated-battery conviction.

We affirm defendant's convictions but remand with directions to correct the sentencing judgment. The trial court did not abuse its discretion by admitting the victim's statement into evidence for a limited purpose. The court's response to the jury's question was legally accurate, and the variance between the charging instrument and the evidence at trial was not fatal. Defendant's conviction for domestic battery did not violate the one-act, one-crime rule because it was based on different acts and, as charged, domestic battery was not a lesser-included offense of aggravated battery. However, the State concedes, and we agree, that the court erred by sentencing defendant to two years' MSR on his aggravated-battery conviction. Therefore, we remand for issuance of an amended sentencing judgment to reflect a one-year period of MSR for defendant's aggravated-battery conviction.

Defendant also asserts that his success on the MSR issue prevents the State from obtaining its costs for this appeal. We disagree and conclude the State is entitled to its costs for this appeal.

I. BACKGROUND

In April 2006, the State charged defendant with aggravated battery (count I), domestic battery (count II), and interfering with reporting of domestic violence (count III). Count I

- 2 -

alleged that defendant knowingly and without legal justification made physical contact of an insulting or provoking nature with Debra Billups by holding a knife, a deadly weapon, to her throat. Count II alleged that defendant knowingly and without legal justification made physical contact of an insulting or provoking nature with Billups, a family or household member, by putting his hands around her neck. Count II was charged as a Class 4 felony because defendant had been previously convicted of domestic battery. See 720 ILCS 5/12-3.2(b) (West 2006).

On June 19, 2006, the jury trial commenced. In his opening statement, defense counsel informed the jury that the evidence would show that Billups was so drunk she could not remember what happened that evening.

The State called Billups to testify, as well as two of the police officers who responded to the 9-1-1 call, Kendra DeRosa and Jwone Hughes. The evidence indicated that on April 4, 2006, at approximately 11:45 p.m., the police were called to the mobile home where defendant and Billups resided. Defendant left the residence at the suggestion of the police but later returned to the mobile home. At approximately 3 a.m. on April 5, 2006, the police were again dispatched to defendant and Billups' home.

Billups testified that when defendant returned to the home, she let him in but locked him out of their bedroom. According to Billups, defendant kicked the bedroom door open and choked her until she blacked out. When she regained consciousness, defendant poked her in her head, side, and back with a knife and

- 3 -

asked her "where did [she] want it." Billups managed to call 9-1-1 during the incident.

On cross-examination, Billups admitted she was intoxicated that evening and had consumed six beers and four shots of alcohol. However, both police officers testified that Billups did not appear intoxicated. Specifically, Officer Hughes testified that he had had contact with Billups in the past and had seen her intoxicated. Officer Hughes saw no indication that Billups was "heavily intoxicated" the night in question. Officer DeRosa testified that Billups did not exhibit the signs of intoxication DeRosa typically observed in intoxicated persons, such as difficulty following verbal direction, confusion, blood-shot and glassy eyes, "stammer[ing] around," and lack of depth perception.

Billups also admitted on cross-examination that she had a phone conversation with an investigator from defense counsel's office the Friday prior to trial. Billups admitted she told the investigator that she was so intoxicated the night in question that she did not remember what occurred. Billups testified, however, that since speaking to the investigator, the events of the evening had come back to her. On redirect, Billups testified that her testimony at trial was based on her memory and that she remembered the events.

Officer DeRosa testified that when she arrived at the mobile home, Billups told her that defendant had choked her and held a knife to her head and various parts of her body. The

officers found a knife in the kitchen garbage can. Officer DeRosa saw red marks around Billups' neck and a scratch on her right shoulder. Pictures of those injuries were admitted at trial. Officer DeRosa also felt the top of Billups head for an indentation Billups claimed was caused when defendant stuck the knife to her head. Officer DeRosa felt a small indentation.

Both officers testified that they witnessed Billups complete and sign a written statement on April 5, 2006, State's exhibit No. 5. Officer DeRosa testified that Billups followed her instruction to place a large "X" in the empty area on the page and initial it so as to show nothing was added. Officer Hughes testified that Billups stayed within the lines and the statement was legible.

Defendant testified on his own behalf. He testified that Billups was intoxicated on the night in question. Defendant denied attempting to strangle Billups and denied ever using a knife on her.

The State sought to publish to the jury Billups' statement, exhibit No. 5, for the limited purpose of countering defendant's testimony that Billups was intoxicated. Defense counsel objected on the basis that the contents of the statement were highly prejudicial and the State failed to present an expert to testify that the handwriting was inconsistent with someone who was highly intoxicated.

The trial court overruled defense counsel's objections and admitted the exhibit for the limited purpose of considering

- 5 -

whether Billups was highly intoxicated on the night in question. The court instructed the jury as follows:

> "I have admitted State's [e]xhibit [No.] 5. State's [e]xhibit [No.] 5 was identified as the handwritten statement of Debra Billups[;] however, I have admitted it for a limited purpose rather than for all purposes of consideration. The limited purpose for which you may consider this exhibit is to consider whether and/or to what extent Debra Billups was intoxicated on the night in question and not for any other purpose.
>
> In an effort to limit your consideration of the exhibit to that limited purpose, State's [e]xhibit [No.] 5 will be published to you or handed to you here in the court-room, and you may look at it for several minutes if you wish. But, otherwise, it won't be going back to the jury room for your more detailed consideration."

While the exhibit was passed to the jurors, defense counsel approached the bench. The following exchange occurred:

> "MR. DODDS [defense counsel]: Your Honor, I want to point out to the [c]ourt that it appears that one of the jurors is writing down what's contained in the exhibit. Cer-

- 6 -

tainly didn't anticipate this, but I think it raises a point that was addressed by counsel of introducing the evidence in the first place.

THE COURT: Okay.

(Brief interruption.)

(The following proceedings were had in the presence and hearing of the jury).

MR. GRIENER [assistant State's Attorney]: I believe they're finished."

The record contains no additional information about this incident.

In closing argument, the assistant State's Attorney apportioned the two acts--the choking and the use of the knife--between the two offenses. That is, the assistant State's Attorney argued that defendant committed domestic battery when he choked Billups and committed aggravated battery when he put the knife on various parts of Billup's body. The only use the State made of exhibit No. 5 in closing argument was to ask the jury to consider whether the handwriting appeared to be that of a "person who was drunk out of [her] mind." The trial court then instructed the jury, including the instruction that "evidence that was received for a limited purpose should not be considered by you for any other purpose" (People's tendered instruction No. 1, based on Illinois Pattern Jury Instructions, Criminal, No. 1.01 (4th ed. 2000)).

- 7 -

During deliberations, the jury submitted the following question: "By using a deadly weapon, does that mean having physical contact with the weapon?" Following a discussion with counsel, and at defense counsel's request, the court recessed to give the parties the opportunity to review the case law regarding whether actual physical contact with the weapon must be made.

After the recess, the State submitted People v. Avant, 86 Ill. App. 3d 268, 409 N.E.2d 296 (1980), for the proposition that aggravated battery under section 12-4(b) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12-4(b) (West 2006)) does not require that the deadly weapon be the instrument of the battery. Defense counsel argued that Avant was distinguishable and asked the court to respond to the jury's question by referring it to the instructions already given. The trial court refused defense counsel's request. Defense counsel then requested the court seek more clarification from the jury about what it was asking.

The trial judge found that "[w]hile the possibility of misunderstanding exists, I don't believe a misunderstanding exists." The court noted that if the response was not what the jury was seeking, the jury would ask another question. The court, over defense counsel's objection, responded to the jury's question as follows: "No, the law does not require that the deadly weapon be the instrument of the physical contact." Thereafter, the jury returned a verdict finding defendant guilty of aggravated battery and domestic battery and not guilty of inter-

ference with reporting domestic violence.

In July 2006, defendant filed a posttrial motion. Defendant raised, among other things, numerous objections to the admission of exhibit No. 5, including that (1) the exhibit lacked a proper foundation; (2) the exhibit was duplicative of other evidence; (3) the exhibit constituted improper bolstering and hearsay; (4) the exhibit's prejudice outweighed its probative value; (5) the limited purpose for which the exhibit was admitted required expert testimony; (6) the trial court should have first ascertained the meaning of the jury's inquiry; and (7) the court erred by instructing the jury with the additional language from the Avant case. In September 2006, the court denied the motion.

On September 12, 2006, the trial court sentenced defendant to five years' imprisonment on count I followed by a two-year MSR term, and three years' imprisonment on count II followed by a one-year MSR term. Defendant filed a motion to reconsider sentence, which the court denied.

This appeal followed.

## II. ANALYSIS

### A. Trial Court Did Not Abuse Its Discretion by Admitting Billups' Statement for a Limited Purpose

Defendant argues the trial court erred by admitting into evidence Billups' written statement to rebut defendant's claim that Billups was intoxicated on the night in question.

### 1. Standard of Review

When evidence is competent for only one purpose, it may be admitted for that limited purpose. People v. Libman, 249 Ill.

App. 3d 451, 457, 618 N.E.2d 1129, 1133 (1993). However, only relevant evidence should be admitted, and even relevant evidence may be excluded if "its prejudicial effect substantially outweighs its probative value." People v. Ransom, 319 Ill. App. 3d 915, 921-22, 746 N.E.2d 1262, 1268-69 (2001).

The admission of evidence is within the discretion of the trial court. People v. Davis, 322 Ill. App. 3d 762, 765, 751 N.E.2d 65, 67 (2001); see also People v. Alsup, 373 Ill. App. 3d 745, 759, 869 N.E.2d 157, 170 (2007) (holding that "[t]he determination of whether the probative value of evidence is outweighed by its prejudicial effect" is within the discretion of the trial court). Absent prejudice to the defendant, this court will not interfere with the trial court's discretion. People v. Spann, 97 Ill. App. 3d 670, 677, 422 N.E.2d 1051, 1057 (1981); see also Davis, 322 Ill. App. 3d at 765, 751 N.E.2d at 67 (noting that the appellate court will reverse if the trial court admits into evidence prejudicial exhibits that lack the requisite foundation).

2. Trial Court Did Not Admit Statement as Substantive Evidence

Defendant first argues the admission of the statement constituted an improper admission of a prior consistent statement. Defendant asserts the jury may have incorrectly believed that Billups' handwriting exhibited lucidity and control that was inconsistent with any level of alcohol impairment, thereby mitigating the defense's assertion that she was too intoxicated to offer credible trial testimony about the incident.

- 10 -

Defendant is correct that a witness's trial testimony may not be bolstered by the admission of prior consistent statements made out of court. People v. Ware, 323 Ill. App. 3d 47, 51, 751 N.E.2d 81, 85 (2001). However, the record clearly demonstrates the trial court did not admit the statement into evidence substantively, but only for the purpose of showing the jury Billups' handwriting on the night in question. The evidence was relevant (as discussed further below), and the court gave a limiting instruction. As such, the court did not abuse its discretion. See, e.g., People v. Illgen, 145 Ill. 2d 353, 376, 583 N.E.2d 515, 525 (1991) (finding that the limiting instruction reduced the prejudicial effect of the admission of other-crimes evidence).

### 3. The Record Does Not Support Defendant's Assertion That the Jury Could Not Follow Limiting Instruction

Defendant next argues the limiting instruction was insufficient to mitigate the prejudicial effect. According to defendant, in this situation the jury could not follow the trial court's instruction, as evidenced by the fact that at least one juror disregarded the court's limiting instruction by writing down the substance of the statement.

Defendant compares the admission of the statement in this instance to cases where a nontestifying codefendant's extrajudicial statement was admitted at a joint trial with a limiting instruction that the jury disregard the statement as evidence of the defendant's guilt or innocence. See People v. Duncan, 124 Ill. 2d 400, 530 N.E.2d 423 (1988); see also Bruton

- 11 -

v. United States, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968).  In Duncan, the court noted:

> "Although it is often reasonable to assume that a jury has followed a trial judge's limiting instructions regarding evidence admitted for one purpose but not for another, 'there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. [Citations.]' (Bruton, 391 U.S. at 135, 20 L. Ed. 2d at 485, 88 S. Ct. at 1627.)"  Duncan, 124 Ill. 2d at 406, 530 N.E.2d at 426.

However, this context differs greatly from the situation involving a codefendant's extrajudicial statement implicating the defendant.  In fact, since Bruton, the United States Supreme Court has permitted the use at a joint trial of a nontestifying codefendant's confession, even where the defendant is linked to the confession through other evidence, if the confession is redacted to eliminate references to the defendant and if the jury is instructed not to use the confession against the defendant.  See Richardson v. Marsh, 481 U.S. 200, 211, 95 L. Ed. 2d 176, 188, 107 S. Ct. 1702, 1709 (1987).  In this case, the probability that the jury would not be able to follow the in-

struction is not present.  See, e.g., People v. Gonzalez, 379 Ill. App. 3d 941, 954-55, 884 N.E.2d 228, 239-40 (2008) (finding no error in the admission, for a limited purpose and with a limiting instruction, of an out-of-court statement by a person stating she knew the defendant killed the victim; a strong presumption exists that the jury follows a limiting instruction, and nothing in the record rebutted that presumption).

As "proof" that the jury could not follow the instruction, defendant points to the indication in the record that at least one juror was writing down Billups' statement verbatim. However, defendant has forfeited that argument.  Although defense counsel informed the court that it appeared that one of the jurors was writing down verbatim the statement, nothing in the record indicates whether defense counsel asked the court to stop the juror from doing so, otherwise question the jury, or look at the jurors' notes.  Also, based on this record, this court cannot determine whether the juror was writing down the statement verbatim or taking notes on his or her impression of the statement and its legibility.  Because defendant failed to express his dissatisfaction with the trial court's handling of the matter in the trial court, he has forfeited the issue on appeal.  See, e.g., Zukosky v. Grounds, 85 Ill. App. 3d 355, 363, 406 N.E.2d 848, 854 (1980) (finding that plaintiff's counsel acquiesced in the trial court's disposition of the alleged misconduct--alleged communication between the defendant and a juror--by failing to express dissatisfaction in the trial court, thereby forfeiting

- 13 -

the issue for review).

### 4. Trial Court's Admission of the Statement for a Limited Purpose Was Not an Abuse of Discretion

Finally, defendant argues the purpose for the admission of the statement--for the limited purpose of considering whether Billups was highly intoxicated on the night in question--was illusory because the jury could not determine the state of her intoxication by reading the statement, examining her handwriting, and observing her ability to stay in the lines.

Observations of signs of intoxication are within the competence of the average adult. See, e.g., People v. Workman, 312 Ill. App. 3d 305, 310, 726 N.E.2d 759, 762-63 (2000) (noting that "even a layperson is competent to testify regarding a person's intoxication from alcohol, because such observations are within the competence of all adults of normal experience"). While certainly not conclusive, the suggestion that an intoxi- cated person would not write neatly and within the lines is a reasonable one. See, e.g., People v. Jones, 65 Ill. App. 3d 1033, 1036, 383 N.E.2d 239, 241 (1978) (noting that the "[d]efendant's handwriting appearing on the waiver suggests no appearance of intoxication"); State v. Sanders, 130 Ohio App. 3d 789, 795, 721 N.E.2d 433, 437 (1998) (finding the trial court erred by excluding a copy of the defendant's signature shortly after her arrest to refute the trooper's testimony that the defendant's motor skills were impaired due to the influence of alcohol. "When a signature appears neat and legible, the infer- ence that can be made is that the signer's motor skills were not

impaired").

Even if the trial court erred by admitting the exhibit for the limited purpose of showing Billups' handwriting, any error was harmless. The evidence against defendant was overwhelming, given the trial testimony from Billups and the officers and the pictures of Billups' injuries. See, e.g., People v. Lombardi, 305 Ill. App. 3d 33, 44, 711 N.E.2d 426, 434 (1999) (the improper admission of evidence is harmless beyond a reasonable doubt where the evidence against the defendant is overwhelming). Moreover, the statement is not particularly consistent with Billups' trial testimony, as it contains no reference to defendant choking Billups.

Although the trial court did not abuse its discretion by admitting the statement for the limited purpose of showing the jury Billups' handwriting, a better practice would include indicating on the record the length of time the jurors were allowed to examine the document. In addition, once defense counsel raised the possibility that one of the jurors was copying the statement, the court should put on the record what transpired, review the jurors' notes, and possibly voir dire the jury on the issue.

### B. Trial Court's Response to the Jury's Question Was Legally Correct, and Defendant Forfeited the Argument That Any Variance Between the Indictment and the Evidence Was Fatal

Defendant next argues the trial court's response to the jury's question was incorrect and not consistent with the charging instrument. Specifically, defendant asserts that (1) aggra-

- 15 -

vated battery under subsection (b) of section 12-4 of the Criminal Code (720 ILCS 5/12-4(b) (West 2006)) requires that the offender actually use a deadly weapon in the commission of a battery; and (2) the response was inconsistent with count I of the indictment which alleged that defendant "knowingly made physical contact of an insulting or provoking nature with Debra Billups by holding a knife, a deadly weapon, to her throat."

The State argues defendant has forfeited these issues on appeal. Specifically, the State asserts that in the trial court, defendant only suggested the court refer the jury back to the instruction originally given and that Avant was factually distinguishable. According to the State, defendant never argued the response created a prejudicial variance with the language of the indictment.

The Illinois Supreme Court recently held, in regard to a jury instruction, that a defendant need not object to the instruction on the identical grounds in the trial court as on appeal to avoid forfeiture. See People v. Mohr, 228 Ill. 2d 53, 64-65, 885 N.E.2d 1019, 1025 (2008) (finding that the defendant's objection at trial to an instruction on the basis that "once the jurors heard the information alleging that the defendant was provoked by the victim, the State was required to 'back that up'" did not forfeit the argument raised in his posttrial motion and on appeal that no evidence of provocation was presented because the objection was "close enough"). Here, defendant raised several objections to the trial court's response to the jury

inquiry both at trial and in his posttrial motion.  At trial,

defendant challenged the Avant case as distinguishable.  This

argument was "close enough" to his argument on appeal that the

court misstated the law in its response.  However, none of

defendant's objections at trial were similar to the second

argument he now raises on appeal--that the response to the jury

question was inconsistent with count I of the indictment.

Therefore, defendant has forfeited that argument on appeal.

Whether the court misstated the law is a question of

law, and our review is de novo.  People v. Gray, 346 Ill. App. 3d

989, 994, 806 N.E.2d 753, 757 (2004).  The jury submitted the

following question:  "By using a deadly weapon, does that mean

having physical contact with the weapon?"  The trial court

responded as follows:  "No, the law does not require that the

deadly weapon be the instrument of the physical contact."

Defendant argues on appeal that the State had to show more than

mere possession of the knife and that this court's decision in

Avant, 86 Ill. App. 3d 268, 409 N.E.2d 296, the case relied on by

the trial court, is distinguishable.

In the Avant case, the defendant, with his left hand,

knocked the victim's cap off his head.  Avant, 86 Ill. App. 3d at

270, 409 N.E.2d at 297.  After the cap was knocked off his head,

the victim noticed the defendant had a pistol halfway out of his

pocket with his right hand on the pistol.  Avant, 86 Ill. App. 3d

at 270, 409 N.E.2d at 297.  The defendant argued that because he

did not knock off the victim's hat with his gun and the victim

- 17 -

did not see the gun until his cap was knocked off, defendant could not be convicted of aggravated battery. Avant, 86 Ill. App. 3d at 270, 409 N.E.2d at 297. This court disagreed, concluding that aggravated battery does not require that "the deadly weapon be the instrument of the battery." Avant, 86 Ill. App. 3d at 270, 409 N.E.2d at 297. Specifically, we stated:

> "The Committee Comments to section 12-4 of the Illinois Criminal Code of 1961 (Ill. Ann. Stat., ch. 38, par. 12-4, Committee Comments, at 465 (Smith-Hurd 1979)) state[] that section 12-4(b) 'involves a battery committed under aggravated circumstances from which great harm might and usually does result (although it did not in the particular case), and therefore it constitutes a more serious threat to the community than a simple battery.' Ostensibly, section 12-4(b) was intended to reach the type of conduct engaged in here. Moreover, we agree with the State that, although the weapon was not used to make the actual contact complained of, the weapon was used to make the contact more insulting or provocative. The statute does not require that the deadly weapon be the instrument of the battery." Avant, 86 Ill. App. 3d at 270, 409 N.E.2d at 297.

Clearly, the trial court did not err by advising the jury, in response to its inquiry, that the "law does not require that the deadly weapon be the instrument of the physical contact."

Defendant also argues the trial court's response to the jury question was inconsistent with count I of the indictment, which alleged that defendant "knowingly made physical contact of an insulting or provoking nature with Debra Billups by holding a knife, a deadly weapon, to her throat." Defendant argues the State had to prove that defendant held the knife to Billups' throat. As previously noted, defendant has forfeited this argument by failing to raise it before the trial court. Even if this court were to address the issue on the merits, we would find no error.

"In order for a variance between an indictment and proof at trial to be fatal, the difference must be material and of such a character as to mislead defendant in his defense or expose him to double jeopardy." People v. Burdine, 362 Ill. App. 3d 19, 24, 839 N.E.2d 573, 577 (2005) (involving alleged variance in the indictment which alleged that the defendant struck the fireman and the evidence at trial that the defendant bit the fireman). No such variance appears in this case.

Here, the indictment identified the victim, the nature of the incident, and the date and place of the incident. See Burdine, 362 Ill. App. 3d at 24, 839 N.E.2d at 577. Defendant does not face the risk of double jeopardy because the judgment could be used to bar a subsequent prosecution for the same

conduct.

Moreover, defendant was not misled by the alleged variance in the indictment. Defendant knew what happened and why he was arrested. See Burdine, 362 Ill. App. 3d at 24, 839 N.E.2d at 577 (finding a difference between the indictment, which alleged the defendant struck the fireman, and the evidence at trial that the defendant bit the fireman was not a fatal variance). The indictment apprised defendant of the offense charged sufficiently for presentation of his defense.

Defendant cites People v. Daniels, 75 Ill. App. 3d 35, 393 N.E.2d 667 (1979), which is distinguishable. In that case, the defendants were charged with armed robbery and the indictment alleged that the defendants took United States currency from the victim. Daniels, 75 Ill. App. 3d at 40, 393 N.E.2d at 672. The evidence at trial, however, only related to theft of a watch. Daniels, 75 Ill. App. 3d at 40, 393 N.E.2d at 672. Moreover, the State did not prove that the victim wore or owned a watch or that the watch was taken by one of the defendants. Daniels, 75 Ill. App. 3d at 41, 393 N.E.2d at 673. Therefore, the court reversed the armed-robbery convictions. Daniels, 75 Ill. App. 3d at 41, 393 N.E.2d at 673.

In contrast here, the knife was involved whether defendant held it to Billups' neck or other parts of her body. Unlike Daniels, the variance was not so material as to warrant a new trial and did not mislead defendant in preparing his defense.

### C. Defendant's Domestic-Battery Conviction Does Not Violate the One-Act, One-Crime Rule

- 20 -

Defendant next argues that if this court finds the trial court's response to the jury inquiry was correct and the knife did not have to be the instrument of physical contact, this court must vacate defendant's domestic-violence conviction to insure that the one-act, one-crime rule is not violated. While defendant forfeited this issue by raising it for the first time on appeal, the plain-error doctrine permits review of the error. See People v. Harvey, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194 (2004) (holding that the plain-error rule permitted review of the one-act, one-crime issue because a violation and the potential for surplus conviction and sentence affected the integrity of the judicial process).

To determine whether multiple convictions may properly be entered, courts must engage in a two-step analysis. First, the court must determine whether the defendant's conduct consisted of separate acts or a single physical act. People v. Rodriquez, 169 Ill. 2d 183, 186, 188, 661 N.E.2d 305, 306, 307-08 (1996) (finding that the aggravated-criminal-sexual-assault offense and the home-invasion offense were based on separate acts). An "act" is "any overt or outward manifestation which will support a different offense." People v. King, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977) (finding offenses of rape and burglary were based on separate acts). While multiple convictions based on the same physical act are improper (Rodriquez, 169 Ill. 2d at 186, 661 N.E.2d at 306)), a person can be guilty of two offenses even when a common act is part of both offenses

(Rodriguez, 169 Ill. 2d at 188, 661 N.E.2d at 308).

Second, if a defendant committed more than one act, the court must then determine whether any of the offenses are lesser-included offenses. Rodriguez, 169 Ill. 2d at 186, 661 N.E.2d at 306. To determine whether an offense is a lesser-included offense, courts look to the charging instrument. People v. Bussan, 306 Ill. App. 3d 836, 839, 715 N.E.2d 820, 822 (1999). Under this approach, "an offense is a lesser[-]included offense if it is described by the charging instrument of the greater offense." Bussan, 306 Ill. App. 3d at 839, 715 N.E.2d at 822.

A lesser-included offense is "established by proof of the same or less than all of the facts or a less[-]culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2006). However, "[a] charging instrument need not expressly allege all the elements of the [offense] if those elements can be inferred from the language of the charging instrument." People v. Baldwin, 199 Ill. 2d 1, 8, 764 N.E.2d 1126, 1130 (2002). If an offense is a lesser-included offense, multiple convictions are improper. Rodriguez, 169 Ill. 2d at 186, 661 N.E.2d at 306-07. If the offense is not a lesser-included offense, then multiple convictions are permissible. Rodriguez, 169 Ill. 2d at 186, 661 N.E.2d at 306-07. Our review is de novo. People v. Milton, 309 Ill. App. 3d 863, 868, 723 N.E.2d 798, 802 (1999).

For the State to properly obtain multiple convictions for connected acts that might be treated as a series of offenses,

the State must apportion the acts to the offenses in the charging instrument and at trial. See People v. Crespo, 203 Ill. 2d 335, 345, 788 N.E.2d 1117, 1123 (2001). In this case, the State charged defendant with aggravated battery based on holding a knife to Billups' throat and with domestic battery for putting his hands around Billups' neck. At trial, during closing arguments the prosecutor clearly distinguished between the separate acts for the separate charges. Therefore, defendant's conduct consisted of separate acts and not a single physical act.

Defendant argues that the jury instructions did not apportion the charges. However, defendant did not object to the jury instructions and, therefore, has forfeited any alleged error. People v. Anderson, 325 Ill. App. 3d 624, 636, 759 N.E.2d 83, 93 (2001) (failure to object to a jury instruction forfeits the issue on appeal). Moreover, even if the issue were not forfeited, defendant cites no authority for the argument that the jury instructions must apportion the acts. Finally, the evidence adduced at trial indicated discreet, insulting, or provocative acts for domestic battery and aggravated battery. Billups testified that defendant choked her until she blacked out. Billups further testified that defendant poked her head, sides, and back with a kitchen knife.

Having found that defendant committed more than one act, this court must next determine whether domestic battery or aggravated battery is the lesser-included offense of the other. Rodriquez, 169 Ill. 2d at 186, 661 N.E.2d at 306. The charging

- 23 -

instrument alleged that defendant committed the offense of aggravated battery:

> "IN THAT HE KNOWINGLY AND WITHOUT LEGAL JUSTIFICATION MADE PHYSICAL CONTACT OF AN INSULTING OR PROVOKING NATURE WITH DEBRA BILLUPS BY HOLDING A KNIFE, A DEADLY WEAPON, TO HER THROAT ***."

The charging instrument alleged that defendant committed the offense of domestic battery as follows:

> "IN THAT HE KNOWINGLY AND WITHOUT LEGAL JUSTIFICATION MADE PHYSICAL CONTACT OF AN INSULTING OR PROVOKING NATURE WITH DEBRA BILLUPS, A FAMILY OR HOUSEHOLD MEMBER, BY PUTTING HIS HANDS AROUND HER NECK, SAID DEFENDANT HAVING BEEN PREVIOUSLY CONVICTED OF THE OFFENSE OF DOMESTIC BATTERY IN MCLEAN COUNTY CASE 2005 CM 1300 ***."

Clearly, the aggravated-battery conviction required a deadly weapon, an element the domestic-battery charge did not require, and the domestic battery had elements that the aggravated battery did not require--Billups' identity as a family or household member and defendant's previous conviction for domestic battery. See People v. Peacock, 359 Ill. App. 3d 326, 335, 833 N.E.2d 396, 404 (2005) (finding, based on the charging instrument, that aggravated battery and domestic violence were not lesser-included offenses of home invasion). Therefore, defen-

- 24 -

dant's conviction for domestic battery does not violate the one-act, one-crime rule.

### D. Sentencing Judgment Must Be Amended To Show a One-Year Period of MSR for the Aggravated-Battery Conviction

Defendant argues the trial court erred in sentencing him to two years' MSR on his aggravated-battery conviction. The State concedes the error, and we accept that concession.

Aggravated battery is a Class 3 felony. 720 ILCS 5/12-4(e)(1) (West 2006). For a Class 3 felony, the MSR term is one year. 730 ILCS 5/5-8-1(d)(3) (West 2006). Therefore, on remand, the trial court shall amend the sentencing judgment to reflect a one-year period of MSR for the aggravated-battery conviction.

### E. The State Is Entitled to Costs for This Appeal

In its appellee brief, the State seeks costs pursuant to section 4-2002 of the Counties Code (55 ILCS 5/4-2002 (West 2006)). In his reply brief, defendant objects, noting that costs should not be assessed against him because he received partial relief as a result of his appeal.

However, "[t]he successful defense of any part of a criminal judgment challenged on appeal entitles the State to a per diem fee and costs for its efforts." People v. Smith, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985) (assessing costs on appeal where the defendant's conviction and sentence were affirmed with the exception that the defendant was given $10 credit against fines for two days spent in jail prior to trial), citing People v. Nicholls, 71 Ill. 2d 166, 178, 374 N.E.2d 194, 199 (1978) (holding that the appeal fee shall be taxed as costs

unless judgment is entered in favor of the accused in full). Because the State has in part successfully defended a portion of the criminal judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

### III. CONCLUSION

For the reasons stated, we affirm defendant's convictions for aggravated battery and domestic battery but remand for issuance of an amended sentencing judgment to reflect a one-year period of MSR for defendant's aggravated-battery conviction. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

Affirmed as modified and remanded with directions.

KNECHT and TURNER, JJ., concur.